

### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT JACKSON

**FILED**

**December 7, 2017**

**TN COURT OF WORKERS' COMPENSATION CLAIMS**

**12:40 P.M.**

| | | |
|---|---|---|
| **RICKY PRIVETT,** | ) | **Docket No. 2017-07-0252** |
| Employee, | ) | |
| v. | ) | |
| **SIGNAL POINT SYSTEMS,** | ) | **State File No. 84224-2016** |
| Employer, | ) | |
| And | ) | |
| **AMERISURE INSURANCE COMPANY,** | ) | **Judge Amber E. Luttrell** |
| Insurance Carrier. | ) | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

This matter came before the Court on November 13, 2017, upon Ricky Privett's Request for Expedited Hearing. Mr. Privett requested medical and temporary disability benefits for injuries to his right shoulder, arm, and left wrist. The central legal issue is whether Mr. Privett is likely to prevail at a hearing on the merits in establishing an injury arising primarily out of his employment. For the reasons set forth below, the Court holds at this time Mr. Privett came forward with sufficient evidence to establish he would likely prevail at a hearing on the merits regarding entitlement to medical benefits but not temporary disability benefits.

### History of Claim

The uncontroverted testimony and exhibits established the following facts. Mr. Privett worked for Signal Point Systems (Signal) as a field technician who serviced standby generators and cell towers. Mr. Privett's job required constant use of his arms and tools, and he worked up to sixty hours per week. On October 12, 2016, Mr. Privett injured his right shoulder, arm, and left wrist when he slipped and fell off the tailgate of a pick-up truck while removing supplies from the truck. When he slipped, Mr. Privett attempted to stop his fall by grabbing a handle with his right hand, which twisted and jerked his right arm. He stated, "it spun me around and I landed on my head and left wrist." He tried to break his fall by extending his left arm to the ground and landed on his left palm. Mr. Privett experienced immediate pain and numbness in his left wrist/hand

1

and severe pain in his right shoulder and arm.

Mr. Privett promptly reported his injury, and Signal provided him authorized treatment at Physician's Quality Care.[1] He initially saw Dr. Carroll, provided a detailed history of his work injury, and complained of aching pain in his right shoulder and left hand with numbness in his left fingers. Dr. Carroll noted abnormal findings on examination of both Mr. Privett's right shoulder and left hand. He diagnosed "pain in left hand" and concluded his left wrist findings suggested carpal tunnel syndrome.

Regarding Mr. Privett's right shoulder, Dr. Carroll diagnosed "pain in right shoulder," noted concern of rotator cuff pathology, prescribed medication and ordered physical therapy. He continued conservative treatment with different physicians at Physician's Quality Care for two months. Mr. Privett's treatment records and physical therapy notes indicated he was not improving and the providers suspected a right biceps tendon rupture. Following an ultrasound that confirmed a retracted biceps tendon and possible supraspinatus tendon tear, the physicians referred Mr. Privett to an orthopedic surgeon. Signal offered him a panel of orthopedic physicians from which he selected Dr. Michael Cobb.

Mr. Privett saw Dr. Cobb twice. He provided Dr. Cobb a consistent history of his work injury and reported persistent symptoms of numbness and tingling in his left thumb, index, and long fingers and pain in his right shoulder since the injury. Upon exam and review of the ultrasound, Dr. Cobb ordered an MRI of the right shoulder and an EMG/NCS of his left arm. At his second visit on December 27, 2016, Dr. Cobb noted Mr. Privett's left wrist EMG/NCS showed severe carpal tunnel syndrome. He believed Mr. Privett's severe result indicated the condition was chronic and not caused by his injury. However, he stated the fall "could have aggravated it."

Concerning Mr. Privett's shoulder, Dr. Cobb referenced the MRI report, which indicated extensive abnormal findings. He summarized the report, stating he has "a lot of degenerative changes throughout the shoulder," with some adhesive capsulitis and a ruptured biceps tendon. Dr. Cobb noted that Mr. Privett did not have a traumatic tear requiring repair. He concluded the MRI findings were degenerative and ordered further physical therapy to improve his range of motion. Dr. Cobb noted uncertainty whether workers' compensation would approve the recommended therapy and returned Mr. Privett to full-duty work.

The parties introduced one physical therapy exam note for Mr. Privett's shoulder following Dr. Cobb's order. In that note, Mr. Privett complained of functional limitations secondary to his right shoulder pain, stiffness, and limited mobility. Following the

---

[1] The testimony is unclear whether Mr. Privett selected Physicians' Quality Care from a panel, but the parties stipulated Signal authorized Mr. Privett's treatment.

2

assessment, the therapist noted the therapy plan and concluded, "Patient presents with signs and symptoms of adhesive capsulitis, . . . likely d/t recent tear of biceps, labrum, and rotator cuff (MRI report)."

Signal subsequently sent Dr. Cobb a letter regarding medical causation. The letter stated, "Mr. Privett has had several tests that show multiple pre-existing findings that appear to be long standing conditions," and asked the following questions:

Considering all of the evidence, within a reasonable degree of medical probability, is it more likely than not that this person's work activity and appropriate diagnosis, considering all possible causes, contributed more than 50% in causing this person's need for conservative treatment and if so for what conditions and what treatments?

Dr. Cobb responded, "not."

Considering all of the evidence (EMG which shows severe median neuropathy/indicative of a long standing condition), within a reasonable degree of medical probability, is it more likely than not that this person's work activity and appropriate diagnosis, considering all possible causes, contributed more than 50% in causing this person's need for CTS surgery?

Dr. Cobb responded, "not likely; more likely pre-existing."

Following Dr. Cobb's responses, Signal denied further treatment. Mr. Privett received no further treatment for his right shoulder, bicep, or left wrist/hand. The parties stipulated Mr. Privett's physicians restricted his work duties during his treatment and Signal voluntarily paid him temporary total disability benefits until Dr. Cobb returned him to full duty. [2]

To support his request for medical benefits, Mr. Privett introduced Dr. Samuel Chung's record review evaluation concerning medical causation. Dr. Chung reviewed Mr. Privett's treatment records, diagnostic studies, and mechanism of injury provided to his treating physicians. He noted the shoulder MRI report indicated a bicep tendon rupture at the anchor with refracted tendon edge. He further noted evidence of a supraspinatus tendinosis and interstitial contact tear. Dr. Chung also reviewed the left arm EMG/NCS and agreed it revealed severe median neuropathy. Following a detailed review of these records, Dr. Chung summarized Mr. Privett's findings and treatment and concluded,

---

[2] The parties stipulated Signal overpaid temporary total disability by nine days representing an $891.60 overpayment. Signal requested credit for the TTD overpayment against any award of temporary disability benefits.

3

It is my professional medical opinion after reviewing the mechanism of the patient's injury as well as the diagnostic studies' findings including MRI of the right shoulder and EMG and nerve conductions of the left upper extremity, [the] causation is more likely greater than 50% attributed by his work related event that happened on October 16, 2016.[3]

Dr. Chung further stated,

The fall which was the causation of the patient's injury to his right shoulder and the pathology that the objective diagnosis revealed directly resulted in the patient's right shoulder pain and function loss. Furthermore, the causation of the injury also resulted in the patient's clinical signs and symptoms and clinical diagnosis of severe left carpal tunnel syndrome. The trauma was the factor which brought about the clinical manifestation of the patient's symptoms of the left median nerve neuropathy.

At the hearing, Mr. Privett testified that he performed his job duties without any difficulty prior to his October 12, 2016 work-injury. He specifically denied any problems or symptoms whatsoever in his left wrist/hand, right shoulder or bicep prior to the injury.

Mr. Privett testified he continues to experience symptoms from his injury. He stated a painful knot appeared on his right bicep during physical therapy. He still experiences numbness and tingling in his left fingers, and his hand goes numb when he drives. Mr. Privett stated he cannot do anything strenuous now and has difficulty getting up off the floor. He desires additional treatment. Mr. Privett acknowledged Dr. Cobb returned him to full-duty work and no other physician has him off work; however, he testified he has been unable to work since his injury.

**Findings of Fact and Conclusions of Law**

To prove a compensable injury, Mr. Privett must show his alleged injury arose primarily out of and in the course and scope of his employment and that it was caused by an incident, or specific set of incidents, identifiable by time and place of occurrence. Further, he must show "to a reasonable degree of medical certainty that [his alleged work injury] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." To prove a compensable aggravation of a pre-existing condition, he must show to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment. Tenn.

---

[3] Dr. Chung's causation opinion incorrectly listed the date of injury as October 16, 2016. The Court finds this to be an inconsequential typographical error and notes Dr. Chung referenced the correct date of injury of October 12, 2016, in two other sections of his report.

4

Code Ann. § 50-6-102(14) (2016).

Since this case is an Expedited Hearing, Mr. Privett need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015); Tenn. Code Ann. § 50-6-239(d)(1).

*Analysis*

Mr. Privett's description of his injury and subsequent symptoms were uncontroverted. No one disputes that Mr. Privett timely reported his work injury and Signal provided him authorized conservative treatment with Physicians' Quality Care, Physicians' Quality Care PT, Dr. Cobb, and Dynamix PT. The Court observed Mr. Privett's demeanor during the hearing and finds he was a straightforward, credible witness. The Court thus holds he came forward with sufficient evidence to establish a specific incident identifiable by time and place of occurrence as required by Tennessee Code Annotated section 50-6-102(14)(A). The question is whether he came forward with sufficient evidence to show he is likely to prove the incident is the primary cause of his conditions and need for medical treatment. The Court finds that he did.

The medical proof addressing medical causation came from Dr. Cobb and Dr. Chung. Dr. Cobb, the panel-selected treating physician, found Mr. Privett's shoulder MRI revealed degenerative findings and as a result concluded that Mr. Privett's work injury did not contribute more than 50% in causing his need for treatment. He further concluded in response to Signal's request that Mr. Privett's EMG/NCS, which revealed severe carpal tunnel syndrome, was likely chronic; therefore, it was "not likely" that his injury contributed more than 50% in causing his need for carpal tunnel surgery.

Dr. Chung disagreed. Upon reviewing Mr. Privett's mechanism of injury, treatment records, and diagnostic study results, Dr. Chung concluded, "causation is more likely greater than 50% attributed by his work related event." Specifically, as for the shoulder, Dr. Chung concluded Mr. Privett's fall caused his injury to his right shoulder and objective pathology, which directly resulted in his right shoulder pain and functional loss. Regarding the left arm, Dr. Chung concluded Mr. Privett's injury caused his carpal tunnel syndrome and clinical symptoms.

"When faced with conflicting medical testimony, the Court must use its discretion in accepting one expert opinion over another and, in so doing, may consider which opinion contains the more probable explanation." *Sanker v. Nacarato Trucks, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *12 (July 6, 2016). Further, and of particular importance here, Tennessee law has long held that medical proof is not to be "read and

5

evaluated in a vacuum" but, instead "must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition." *Thomas v. Aetna Life and Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991).

The Court finds Dr. Chung offered the more probable explanation regarding causation. While Dr. Chung may not have "couched his opinion in a rigid recitation of the statutory definition of injury," our Appeals Board has concluded that a physician need not used particular words or phrases included in the statute to establish the requisite medical proof to succeed at trial. "What is necessary, however, is sufficient proof from which the trial court can conclude that the statutory requirements of an injury as defined in 50-6-102(14) are satisfied." *Panzarella v. Amazon.com, Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *14 (May 15, 2017). The Court finds Dr. Chung's explanation fits with Mr. Privett's uncontroverted testimony that he did not have any treatment or symptoms in his left wrist, right shoulder or arm before October 12, 2016, but after that date suffered significant pain and symptoms for which he needed treatment.

The Court recognizes Dr. Cobb's causation opinion is presumed correct subject to rebuttal by a preponderance of the evidence. *See* Tenn. Code Ann. § 50-6-102(14)(E). However, the Court finds Dr. Chung's opinion rebuts Dr. Cobb's opinion based upon the above findings. Signal further argued Dr. Chung's opinion was deficient because he did not see Mr. Privett for an examination. The Court disagrees. The records indicated Dr. Cobb formulated his causation opinion upon review of Mr. Privett's MRI report and EMG/NCS report. Similarly, Dr. Chung reached his causation opinion following his review of Mr. Privett's records and diagnostic findings. The Court finds no persuasive evidence to suggest that Dr. Chung's ability to review Mr. Privett's records and formulate a causation opinion was hindered by the fact that he did not personally examine him.

For these reasons, the Court holds Mr. Privett came forward with sufficient evidence to establish he would likely prevail at a hearing on the merits that his work injury contributed more than fifty percent in causing his need for medical treatment for his right shoulder, arm, and left wrist.

Finally, to establish entitlement to temporary benefits, Mr. Privett must show he (1) became disabled from working due to a compensable injury, (2) a causal connection between that injury and his inability to work, and (3) the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). Mr. Privett acknowledged Dr. Cobb returned him to full duty in December 2016, and no other physician has taken him off work since that time. Thus, the Court holds he has not established these elements and denies his request for temporary disability benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Signal Point Systems shall provide Mr. Privett with reasonable and necessary medical treatment under Tennessee Code Annotated section 50-6-204. Dr. Cobb shall remain the authorized treating physician and he, or Mr. Privett, shall provide future billing to Signal Point Systems.

2. The Court denies Mr. Privett's request for temporary disability benefits at this time.

3. **This matter is set for a telephonic Status Hearing on December 21, 2017, at 10:00 a.m. Central Time. You must call toll-free at 855-543-5039 to participate in the hearing.** Failure to call may result in a determination of the issues without your participation.

**ENTERED** this the ___7th___ day of December, 2017.

Judge Amber E. Luttrell
**Court of Workers' Compensation Claims**

7

# APPENDIX

Stipulations of Fact:
1. Mr. Privett's date of injury was October 12, 2016.
2. Mr. Privett's compensation rate is $693.47.
3. Dr. Cobb released Mr. Privett to full duty on December 27, 2016.
4. Signal Point Systems paid Mr. Privett temporary disability benefits from October 13, 2016 through January 4, 2017.
5. The parties stipulated Signal Point Systems overpaid TTD in the amount of $891.60 representing nine days of benefits from December 27, 2016 through January 4, 2017, and is entitled to an offset should the Court award additional disability benefits.
6. Signal Point Systems provided Mr. Privett authorized treatment with Physicians' Quality Care, Physicians' Quality Care PT, Dr. Michael Cobb, Dr. Ronald Bingham (EMG/NCS), and Dynamix Physical Therapy.

Exhibits:
1. Medical Records (collective exhibit)
2. First Report of Work Injury
3. Panel of Physicians
4. Notice of Controversy
5. Notice of Change or Termination of Benefits
6. Wage Statement

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Order Denying Request for a Decision on the Record Expedited Hearing
5. Employee's Pre-Hearing Brief
6. Employer's Pre-Hearing Brief

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the _7th_ day of December, 2017.

| Name | Via Email | Service sent to: |
|---|---|---|
| David Hardee, Esq., Attorney for Employee | X | dhardee@hmdlaw1.com<br>kperry@hmdlaw1.com |
| Stephen P. Miller, Esq., Attorney for Employer | X | smiller@mckuhn.com<br>mdoherty@mckuhn.com |

_Penny Shrum_

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClek@tn.gov**

9